## Eliphalet Kimball & others *vs.* Oliver B. Morris, Judge, &c.

Where a judge of probate, on the petition of a creditor, issues a warrant to a messenger to take possession of the estate of a debtor, under the provisions of *St.* 1838, *c.* 163, § 19, this court will not issue a writ of mandamus, commanding such judge to cause the debtor to be arrested and imprisoned, according to § 23 of said statute, for disobeying such judge's order or decree, unless it is alleged in the petition for such writ, and proved or admitted at the hearing, that the facts, required by said § 19 to be set forth in the petitioning creditor's application for proceedings against his debtor, appeared to such judge to be true.

The provision in § 19 of said statute, that a judge of probate may, on the petition of a creditor, order a messenger to take possession of the estate of a debtor who does not dissolve an attachment of his goods or estate, applies to an attachment by the trustee process : And if the person, who is summoned as trustee of such debtor, permits himself to be defaulted, this is *primâ facie* evidence at least, that goods or estate of the debtor are attached in his hands and possession.

Under § 19 of said statute, a judge of probate may, on the petition of a creditor, lawfully issue a warrant appointing a messenger to take possession of the estate of a debtor, without first giving the debtor notice of such petition.

Under § 23 of said statute, a judge of probate may issue a warrant to arrest and imprison a debtor for refusing to obey his order that the debtor appear at a *third* meeting of his creditors, and produce a schedule of his debts, and submit to an examination, on oath, concerning his estate : It seems that the judge may, at any time before granting the debtor a certificate of discharge, require him to submit to an examination on oath.

This was a petition of a mercantile firm in Boston, creditors of Lemuel Davis of Springfield, alleged to be an insolvent debtor, praying the court to grant a rule upon the judge of probate for the county of Hampden, to show cause why a writ of mandamus should not issue against him, commanding him to arrest and imprison said Davis, as the *St.* of 1838, *c.* 163, § 23, requires him to do, when " any insolvent shall disobey any lawful order or decree of the judge in relation to the settlement of his estate, pursuant to " that statute.

The petition alleged, that before the 13th of September 1839, the goods or estate of said Davis had been attached on mesne process in a civil suit founded upon a demand of $ 100 or upwards, which in its nature was proveable against the estate of an insolvent debtor, according to the provisions of the statute abovementioned, which said attachment was not dissolved by said Davis

on or before the last day of the term of the court to which the process in said suit was returnable : That on said 13th of September 1839, and within ninety days after the last day of the term of the court abovementioned, Robert Ashton of New York, a creditor of said Davis, having a demand against h m to the amount of $100, for which a suit might then be brought, and which was in its nature proveable against the estate of an insolvent debtor, applied, by petition to the respondent, judge of probate, &c. setting forth the facts aforesaid, and praying that a warrant might issue to take possession of the estate of said Davis, and that such further proceedings might be had, as are provided in the statute aforesaid : That upon said petition, the said judge, on the 17th of September 1839, issued his warrant, directed to L. Gorham, as messenger, authorizing and requiring him to take possession of the estate of Davis, agreeably to the provisions of said statute, and made returnable on the 14th of October 1839, when said Gorham made return thereof, whereby it appeared that he had executed the same, according to the precept thereof, and that he had given Davis notice of the issuing thereof, and also given him notice to appear at a meeting of his creditors, on said 14th of October, to show cause, if any he had, why assignees of his estate should not be chosen : That Davis did not appear on said day, before said judge, nor produce a schedule of his creditors : That said judge then proceeded to receive and examine the proof of the debts claimed by Davis's creditors, who were present ; and that the creditors, who proved their debts, then duly chose J. B. Curtis and L. Gorham assignees of Davis's estate, and they accepted the trust : That said judge appointed the 30th of November 1839 for the second meeting of the creditors, of which meeting due notice was given by the assignees ; and that said meeting was accordingly held on that day, but that Davis did not then appear : That said judge appointed the 4th of March 1840 for the third meeting of the creditors, of which the assignees gave due notice, and said meeting was then held : That previous to said third meeting, viz. on the 2d of March 1840, said judge issued a summons, which was duly served, commanding Davis to appear at said meeting, and

to produce a schedule of the debts due to his respective creditors, and further to submit to an examination on oath, before said judge and said assignees, conformably to the provisions of law: That Davis did not appear at said meeting, as required by said summons ; and that J. B. Curtis, one of said creditors, and also one of said assignees, moved, at said third meeting, that said judge issue his warrant to a civil officer, commanding him to arrest and commit said Davis to the common jail in the county of Hampden, for not obeying said summons : That said judge then consented to take said motion into consideration, and adjourned said meeting till the 27th of April 1840, for that purpose, and at said adjourned meeting disallowed said motion, and refused to issue such warrant.

This petition was presented at April term 1840, in Hampden, and an order of notice was then directed to be served upon said Morris and Davis, to appear and show cause why a writ of mandamus should not issue.

The first argument was had at the last September term, on the petition as above set forth. The first opinion of the court was pronounced at the last May term in Hampden. The petition was subsequently amended, as hereinafter mentioned, and another argument had at the present term. The final opinion of the court was made known at May term 1842, in Hampden. In that opinion, the facts of the case, and the grounds of argument thereon, are fully exhibited.

*Wells & J. W. Newcomb,* for the petitioners.

*Ashmun & R. A. Chapman,* for the respondent.

DEWEY, J. The petitioners ask this court to exercise its supervising power over the proceedings of the judge of probate for the county of Hampden, in a matter pending before him in a case of insolvency arising under the *St.* of 1838, *c.* 163, by directing a writ of mandamus to issue, requiring the said judge to issue his process for the arrest and imprisonment of Lemuel Davis, the alleged insolvent, for refusing to obey the order of said judge requiring said Davis to appear before him at a meeting of the creditors, and to produce a schedule of his debts, and submit himself to an examination on oath.

To the granting of the prayer of this petition for a mandamus, various objections were urged in the argument of the case, which we have not particularly considered, as we apprehend, upon the case as stated in the petition for a mandamus, there would obviously be a defect in the preliminary proceedings before the judge of probate, which alone would, in the present state of the application, restrain us from requiring of him any further proceedings of a compulsory nature against the debtor.

The proceedings under the insolvent law did not, in the present case, originate with the debtor, but are compulsory in their character, proceeding wholly from the application of a creditor. The authority for proceedings against a debtor, upon the petition of his creditors, is found in § 19 of the act already cited ; which, after reciting specifically the various grounds upon which such application may be made by a creditor, and what facts are necessary to be set forth in such petition, further provides that " if the facts set forth in said petition shall appear to be true to the judge or the master in chancery to whom the same shall be presented, he shall forthwith, by warrant under his hand and seal, appoint some suitable person as messenger, to take possession of all the estate, real and personal, of such debtor," &c. The first step on the part of the petitioning creditor is, therefore, to offer the proper evidence to the judge, or master in chancery, before whom the case is pending, that the facts set forth in the petition are truly and correctly stated ; and upon the sufficiency of the evidence produced, the judge or master must so far adjudicate, as to find that " the facts set forth in the petition appear to be true," before issuing the warrant and taking further cognizance of the case.

But this petition for a mandamus does not allege that the facts, set forth in the petition of the creditor seeking this compulsory process against the debtor, were made to appear to the said judge of probate to be true, before the issuing of a warrant appointing a messenger to take possession of the property of the debtor. This, as it seems to the court, is a material allegation, which ought to be distinctly set forth, and shown affirmatively by the proper evidence, if denied by the other party, before

this court would proceed to grant the writ of mandamus prayed for, even if the other objections taken were untenable. In the present state of the application no opinion is given with regard to these objections.

*Petition for a mandamus refused.*

After the preceding opinion was delivered, the petitioners moved for leave to amend their petition by inserting therein that "it was made to appear to the judge of probate, upon the original application, and before the issuing of the warrant appointing a messenger, that the facts set forth in said application of the said Robert Ashton were true ; " which amendment being found conformable to the record of the proceedings on said petition, was allowed by the court. The opinion of the court upon the general questions raised in the case was delivered by

DEWEY, J. The petition in this case having been amended, so far as to remove the objection stated in the opinion of the court heretofore pronounced, the case now comes before us in such a form as to require an adjudication upon the more important questions raised in the argument of the counsel for the respondent.

The defence is placed upon three distinct and independent grounds. 1. That no proper case existed, which could authorize a proceeding in insolvency of a compulsory character, under *St.* 1838, *c.* 163, § 19 : 2. That the insolvent debtor had no notice of the application or proceedings against him, prior to the appointment, by the judge of probate, of a messenger to take possession of his estate : 3. That the judge of probate had no authority to require the attendance of the insolvent debtor at a *third* meeting of his creditors, for the purpose of producing a schedule of his debts, or submitting himself to an examination on oath upon all matters concerning his estate, and in relation to all debts due or claimed from him.

The proceedings in the present case were instituted before the judge of probate, under that part of § 19 of the statute before mentioned, which authorizes the process, in involuntary insolvency, against "any person whose goods or estate are attached on mesne process in any civil action founded on contract, for the sum of $ 100 or upwards, and who shall not, on or before the

last day of the term of the court to which the process is returnable, dissolve the attachment in the manner hereinafter provided " — upon the application of any creditor having a demand against such person to the amount of one hundred dollars.

1. The first inquiry is, whether the goods or estate of Davis, the alleged insolvent, were attached on mesne process, within the meaning of the statute. The suit against Davis was a trustee process, and the attachment of his goods and estate was by summoning a third person as his trustee, alleging, in the usual form, that the debtor had deposited goods and estate in the hands and possession of the trustee. At the return term, the trustee did not appear and file an answer, but was defaulted ; and subsequently the proceedings now brought into question were instituted against the debtor by the judge of probate, on the application of a creditor.

It is contended, upon this state of the facts, that inasmuch as no specific goods or estate of the debtor were attached on mesne process, the debtor was not subject to these proceedings by reason of his neglect to dissolve the attachment. But upon full consideration of the nature and effect of such attachment of estate in the hands of a trustee, the court are of opinion, that it falls within the case contemplated by the statute, and equally subjects the party to be proceeded against as an insolvent debtor, as any other form of attachment would. In fact it may be, and often is, virtually an attachment of specific property which might have been reached by the ordinary mode of attachment; and this process is resorted to as a more convenient, but equally effectual mode of acquiring a lien upon the property.

It was suggested in the argument — and the suggestion would have furnished a strong reason for adopting the construction contended for by the counsel for the defendant, if the position had been found tenable — that an attachment under the trustee process was not dissolvable at the election of the principal defendant, and therefore that his omission to dissolve it, during the first term of the court at which the process was returnable, ought not to subject the party to be proceeded against as an insolvent debtor. But we are satisfied that the provisions of § 20 of the statute

are broad enough to embrace an attachment under the trustee process. The words "any person, whose goods or estate shall be attached on mesne process in any civil action, may, at any time before final judgment therein, dissolve such attachment, by giving bond with sufficient sureties," &c. clearly include all the various modes of acquiring a lien, by attachment, on the goods or estate of a debtor ; and that of summoning a third person, as the trustee of the debtor, being an effectual mode of acquiring such lien upon the goods, effects or credits of the debtor in his hands — if upon the return of such process into the court to which it is made returnable, the trustee permits himself to be defaulted, we think it is at least *primâ facie* evidence that there are goods or estate of the debtor in his hands, attached, and may well authorize proceedings against such debtor under the insol-vent law, upon the application of his creditors.

2. The next objection taken to the validity of their proceed-ings is, that Davis, the debtor, had no notice of the application to the judge of probate, or of the proceedings prior to the issuing of the warrant appointing a messenger to take possession of all his estate, real and personal ; and this is said to be in violation of the principles of common right and justice, which secure to every man the privilege of being heard, before any adjudication takes place affecting his interests. The general principle is doubtless a sound one, and will be ever sedulously enforced in the administration of justice by our legal tribunals. If 'the preliminary proceedings in these cases must be considered as tantamount to a final decree or adjudication upon the question of the disposing of the estate and adjusting the concerns of the debtor, as an insolvent, under § 19 of the statute, they would seem to be liable to this objection, and ought for that cause to be set aside and treated as a nullity. The statute directing these preliminary proceedings obviously was not framed under the as-sumption that such was the nature and effect of those acts. It has made no provision for giving notice to the debtor prior to the issuing of the warrant to the messenger to take possession of his goods and estate, but has only required, that after the is-suing of such warrant, the messenger shall give notice to the

debtor of the issuing of the same, in such manner as the judge of probate shall in the warrant prescribe. The object of authorizing the preliminary proceedings seems to have been to provide, in the first place, for a sequestration of the property of the debtor, upon an *ex parte* application of a creditor, and in this respect does not essentially differ from proceedings by writ of injunction, issued for the purpose of preserving the property in its present state and position until a hearing can be had.

A similar objection to that now urged was strongly pressed, in relation to the provisions of *St.* 1838, *c.* 14, § 5, authorizing and requiring this court, upon the application of a majority of the Bank Commissioners, representing that any bank in this Commonwealth is insolvent, or its condition such that it ought not further to proceed in its business, to issue an injunction restraining such banking corporation from all further proceedings until a hearing can be had on the subject of its situation, and the management of its concerns. The proceedings under this statute were liable to the same objection, as to want of notice, as exists in the present case ; and the evils of an injunction upon a public institution connected with the currency of the country are certainly not less aggravated or injurious to the party affected, than those arising from the appointment of a messenger, with authority to take possession of the estate, in the case of a private individual, who is charged with acts authorizing proceedings against him as an insolvent debtor. But this court held the objection untenable, and sustained the proceedings. *Commonwealth* v. *Farmers and Mechanics' Bank,* 21 Pick. 542.

We think the remedy for the party aggrieved, in cases like the present, is to appear at the first opportunity after notice given him by the messenger, and object to the proceedings : and, if need be, he may make application to this court, under the provisions of the 18th section of this act, for an injunction to stay all further proceedings, and restore the party to his legal rights and the possession of his property.

Under the one or the other of these modes, which the act has provided for the relief of the party, his rights will be substantially secured ; certainly as much so as can be consistently with

the power of sequestering his goods and estate until a hearing ,
which power may be essential to protect fully the interest of
creditors, inasmuch as a notice to the debtor, previous to the
appointment of the messenger, would furnish great facilities for
withdrawing the property and placing it beyond the reach of legal
process.

3. The third objection is of a different character.   Assuming
that all the preliminary proceedings may have been regular, it is
then contended, that the judge of probate has no authority to
require the attendance of the insolvent debtor, for the purpose
of submitting himself to an examination upon oath in relation to
his debts, or concerning his estate, at any time after the second
meeting of the creditors.   The duty of the debtor, in this mat-
ter, is specified in § 6 of the act, requiring that " the debtor
shall at all times before the granting of his certificate as herein
after provided, upon reasonable notice, attend and submit to an
examination on oath, before the judge and the assignees, upon
all matters relating to the disposal of his estate," &c.

The duty here imposed upon the debtor is general, and un-
limited in point of time, except that it is restricted to some pe-
riod before the granting of his certificate.   No certificate of dis-
charge having been granted in the present case, it would seem
to follow, that it was competent for the judge of probate to re
quire the debtor to appear at the *third* meeting of the creditors,
for the purpose of submitting to an examination upon oath as to
the matters specified in the 6th section.

But it is said on the part of the respondent, that by the 7th
section of this statute, provision is made for appointing the
second meeting of the creditors ; and it is further provided, that
at this meeting the debtor may take and subscribe the oath, pre-
scribed by the statute, preparatory to his final discharge ; and it
is made the duty of the judge of probate, at this meeting of the
creditors, if it shall appear to his satisfaction that the debtor has
made a full disclosure and has conformed to the directions of the
statute, to grant him a certificate of discharge.   The position
taken by the respondent is, that this authority to examine the
party is to be restricted to the *second* meeting ; because at that

meeting the debtor may obtain his discharge. But we think i is too narrow a construction of the statute, and one not required by the letter or the spirit of it, to restrict the power to examine the debtor on oath, as to his estate, and as to his various liabili‹ ties to his creditors, to the second meeting of the creditors. In ordinary cases, such will be the extent of the period allowed for making such examination, as the debtor will have received his discharge at that meeting ; but whenever, from any cause, he has not obtained such certificate of discharge, we think he may be required by the judge of probate, or master in chancery, to attend at a meeting of the creditors, subsequent to such second meeting. The only limit to the authority to require the debtor to submit himself to an examination seems to be, that it be before granting the certificate of discharge.

It was competent, therefore, for the judge of probate to appoint a third meeting of the creditors, and to require the personal attendance of the debtor at such meeting, for the purpose of submitting to an examination under oath, in relation to the matters specified in the statute ; and in case the debtor, after being duly notified to appear at the time and place appointed for said meeting for such purpose, shall unreasonably neglect and refuse so to do, it becomes the duty of the judge of probate, agreeably to the provisions of the 23d section of the statute, to issue his warrant to a proper officer, " commanding him to arrest and commit such debtor to the common jail, to remain in close custody until he shall obey the said order of the said judge, unless he shall be released therefrom by the supreme judicial court, or some justice thereof, on a writ of *habeas corpus*, pursuant to law."

Taking the facts to be truly stated in the present petition for a mandamus, it would seem to have been the duty of the judge of probate to have sustained the application of the assignee for such warrant against Lemuel Davis, the debtor, and to have ordered his arrest and commitment. The result of the present application is, therefore, that the petition for a mandamus is so far sustained, that an alternative mandamus issue to the judge of probate for the county of Hampden, requiring him to issue such a warrant, or to show cause for refusing so to do.